FILED
SUPERIOR COURT
OF GUAM

2022 JAN 27 PM 5: 10

CLERK OF COURT

BY:_____

IN THE SUPERIOR COURT OF GUAM

| | |
|---|---|
| GLIDEPATH MARIANAS OPERATIONS, INC., | Superior Court Case No. <u>CV0767-20</u> |
| Plaintiff, | |
| vs. | **DECISION AND ORDER** |
| OFFICE OF PUBLIC ACCOUNTABILITY, GUAM POWER AUTHORITY, THE TERRITORY OF GUAM, and ENGIE SOLAR, | |
| Defendants. | |

The Court here reviews findings and conclusions rendered by the Public Auditor relative to Guam Power Authority's ("GPA") award of IFB No. GPA-IFB-007-18, Renewable Energy Resources Phase III ("IFB"), to Defendant Engie Solar ("ENGIE"). Having reviewed the procurement record, the parties' briefs, and the relevant laws and procurement rules and regulations, the Court affirms the Public Auditor's decision and determines that GPA did not violate Guam's procurement laws in awarding the IFB to ENGIE.

## I. FACTUAL AND PROCEDURAL BACKGROUND

This case arises out of GlidePath's October 12, 2020 Verified Complaint challenging the Public Auditor's September 28, 2020 Decision for Consolidated Procurement Appeals in OPA-PA-19-010, OPA-PA-20-001, and OPA-PA-20-007 ("Decision"). In its Complaint, GlidePath argues that the Public Auditor erred in affirming GPA's award of IFB No. GPA-IFB-007-18 to ENGIE.



ORIGINAL

The IFB sought to procure energy produced through solar renewable energy production plants with an included energy storage system, with each plant incorporating a photovoltaic ("PV") array and an energy storage system ("ESS") (hereinafter collectively referred to as "PV + ESS"). One PV + ESS plant would be located at a predetermined South Finegayan site and the other at a predetermined Naval Base Guam site. Each PV + ESS plant was to include full-time shifting, meaning that solar energy collected during the day would be stored in the ESS and later discharged from the ESS to the GPA electrical grid. The IFB required the design of each PV + ESS plant to follow additional technical restrictions.

After reviewing five bidders' submissions, GPA issued a Notice of Intent to Award letter to ENGIE. GlidePath protested the solicitation, the award, and the completeness of the procurement record; GPA denied all three of GlidePath's protests. Excerpts of Record ("ER") 000085-000096, 000135-000137, 000309-000311 (June 21, 2021).

GlidePath then initiated three separate appeals with the Office of Public Accountability ("OPA"): OPA-PA-19-010, OPA-PA-20-001, and OPA-PA-20-007. In OPA-PA-19-010, GlidePath argued that GPA ignored that ENGIE's proposals did not comply with the IFB's technical requirements. GlidePath further contended that GPA's acceptance of ENGIE's bid as responsive significantly prejudiced the people of Guam by allowing what is effectively a sole source procurement for projects worth nearly $200 million. GlidePath requested that the Public Auditor order GPA to (1) disqualify ENGIE from eligibility for the award, as its proposal did not materially comply with the technical requirements of the IFB; and (2) award GPA both project sites detailed in the IFB to GlidePath as the next lowest responsive bidder.

In OPA-PA-20-001, GlidePath argued that GPA's handling of the procurement was flawed by leading offerors like GlidePath to submit bids based on technical requirements that GPA later

**ORIGINAL**

claimed need not be met; and that GPA accepted ENGIE's bid based on technical specifications that other offerors could not access. GlidePath again requested that the Public Auditor disqualify ENGIE from eligibility for the award and order GPA to award both project sites to GlidePath as the next lowest responsive bidder. In the alternative, GlidePath requested the Public Auditor order GPA to (1) allow for a period of clarifications and discussion between GPA and offerors to eliminate all questions about the technical nature of the system required by GPA for the IFB; and (2) receive and review new technical and price proposals from all existing offerors.

In OPA-PA-20-007, GlidePath argued that the procurement record was not maintained in accordance with the law, and requested the Public Auditor vacate the award and reissue the IFB.

The Public Auditor conducted an evidentiary hearing on July 6, 7, 8, 9, and 14, 2020. On September 28, 2020, the Public Auditor issued a Decision denying GlidePath's appeals of the protest denials. The Public Auditor concluded that: (1) ENGIE'S bid complied with the requirements of the IFB and GPA validly accepted the bid as responsive; (2) GPA did not conduct a sole-source procurement; and (3) the procurement record was not materially incomplete.

GlidePath subsequently filed the present action pursuant to 5 GCA § 5707 and presented three arguments. First, GlidePath cites the definition of "Responsive Bidder" under 5 GCA § 5201(g) and asserts that ENGIE's bid was not responsive because its bid exceeded the 20.7 megawatt ("MW") PV installation limit under the terms of IFB. In support, GlidePath argues that the IFB, by its terms, limited the capacity of the installed PV charging system to 20.7 MW. Further, GlidePath asserts that ENGIE's bid, which was based upon installed PV capacity of 27.64 and 26.47 MW, failed to conform with the IFB. In turn, according to GlidePath, the Public

ORIGINAL

Auditor erred in affirming GPA's finding that ENGIE's bid satisfied the 20.7 MW limit based on its software "clipping" approach, which capped the "DC/DC converter" feature at 20.7 MW.

Second, GlidePath points to GPA's conduct throughout the procurement process and argues that, by virtue of its ambiguities, mismanagement, and inconsistencies, GPA did not hold the offerors to the same set of requirements. Specifically, GlidePath argues that GPA did not state a coherent and reasonable explanation of the "145% Requirement" under the IFB. GlidePath asserts that this rendered the IFB a sole-source procurement and that GPA's price comparison of the bids was an "apples to oranges" exercise. It follows, according to GlidePath, that GPA acted arbitrarily and capriciously and the Public Auditor erred in allowing the award to ENGIE stand.

Finally, GlidePath argues that the procurement record was materially incomplete when GPA awarded the bid; therefore, under *Teleguam Holdings LLC v. Territory of Guam*, 2018 Guam 5 and 5 GCA § 5250, the award to ENGIE must be vacated. GlidePath points to missing communications or records regarding GPA Consultant and Engineer David Burlingame's involvement in the IFB. GlidePath asserts that the Public Auditor erred in affirming GPA's finding that GlidePath filed an untimely protest of the procurement record and in determining that the evidence missing from the record was not material to the procurement.

## II. LAW AND DISCUSSION

In a review of a decision of the Public Auditor, "[a]ny determination of an issue or a finding of fact . . . shall be final and conclusive unless arbitrary, capricious, fraudulent, clearly erroneous, or contrary to law." 5 GCA § 5704(a). "A finding is 'clearly erroneous' when although there is evidence to support it, the reviewing court on the entire evidence is left with the

ORIGINAL

definite and firm conviction that a mistake has been committed." *United States v. U.S. Gypsum Co.*, 333 U.S. 364, 395 (1948).

Furthermore, "[a]ny decision of the Public Auditor, including any determination regarding the application or interpretation of the procurement law or regulations, shall be entitled to great weight and the benefit of reasonable doubt, although it shall not be conclusive on any court having competent jurisdiction." 5 GCA § 5704(b). Under this standard, "the Superior Court should consider the Public Auditor's legal determinations with 'great weight and benefit of reasonable doubt,' but ultimately the standard of review in the Superior Court is *de novo*." *DFS Guam L.P. v. A.B. Won Pat Int'l Airport Auth., Guam*, 2020 Guam 20 ¶ 43 (citations omitted).

## A. ENGIE's bid was responsive under the terms of the IFB.

First, GlidePath argues that ENGIE's bid was non-responsive because it improperly included a PV module capacity in excess of 20.7 MWp. Guam's procurement law defines "responsive bidder" as a "person who has submitted a bid which conforms in all material respects to the Invitation for Bids." 5 GCA § 5201(g). GlidePath's appeal challenges the Public Auditor's interpretation that the IFB requirements did not limit the capacity of the installed PV charging system to 20.7 MW and its conclusion that ENGIE was a responsive bidder.

Guam law allows the Public Auditor "to make a factual interpretation of the terms of the bid solicitation pursuant to its authority provided in Guam's Procurement Law." *Data Mgmt. Res., LLC v. Off. of Pub. Accountability*, 2013 Guam 27 ¶ 48. Specifically, Guam's Administrative Rules and Regulations prescribe that the OPA "shall determine whether a decision on the protest of method of selection, solicitation or award of a contract ... is in accordance with the statutes, regulations, and the terms and conditions of the solicitation." 2 GAR Div. 4 § 12201 (2006). "Furthermore, under the statutorily prescribed standard of review,

**ORIGINAL**

the trial court [is] required to give OPA's interpretation of the solicitation terms 'great weight and the benefit of reasonable doubt....'" *Data Mgmt. Res., LLC*, 2013 Guam 27 ¶ 49.

Here, substantial evidence supports the Public Auditor's interpretation of the IFB requirements. In his Decision, the Public Auditor found the following three requirements of the IFB relevant in resolving whether ENGIE's bid was responsive:

1. The Bidder's renewable resource project will have a maximum export capacity of 30 MW (AC); this may be the combination of several systems at one site. OPA Procurement Record, OPA-PR-12861.

2. The MW rating of the ESS shall be equal to or greater than the 145% of the MW rating of the PV charging system, up to a maximum capacity of 40 MW. For instance, for a PV installation of 27 MW, the ESS shall be rated at a minimum of 40 MW. For a PV capacity of 10 MW, the ESS rating shall be a minimum of 14.5 MW. *Id.* at OPA-PR-13512.

3. The MW output of PV used to charge the ESS should be maximized to the amount of capacity available on each site and any energy restrictions of the ESS. *Id.*

The Public Auditor provided the following explanation for the first requirement:

> This requirement limits each bidder's project to providing no more than 30 megawatt (MW) (AC) of electricity at the interconnection point. The interconnection point is the point on the existing GPA transmission grid where the new plant will be connected. It was included to limit the impact of the Phase III system on GPA's electrical grid, both so that the Phase III system would not overload GPA's electrical grid and to limit the impact on GPA's electrical grid should the Phase III system go down at any time.

*Id.* at OPA-PR-15779.

As for the second requirement, the Public Auditor explained:

**ORIGINAL**

> This requirement links the power rating of the PV charging system to the ESS's MW rating. More specifically, for a given ESS MW rating (PESS), the PV charging system MW rating cannot exceed PESS/1.45. In other words, the PESS must be 145% or greater than the PV charging system MW rating. It was included so the ESS (the battery storage system) would charge at a slower rate throughout the day (over the course of approximately 12 hours) and discharge at a faster rate after sunset (for approximately 4 to 6 hours).

*Id*. at OPA-PR-15779-15780.

> Lastly, regarding the third requirement, the Public Auditor explained:

> This requirement required the bidders to maximize the solar production with their proposed design, within the site's physical constraints and within the economic constraints dictated by each bidder's need to submit a competitive bid.

*Id*. at OPA-PR-15780.

The Public Auditor also cited the testimony of various witnesses at the OPA hearing who testified that the IFB did not require a limitation on the PV charging system:

- Peter Rood, GlidePath's witness and representative, testified that the IFB did not specifically cap the PV module capacity at 20.7 megawatt peak ("MWp"). Rood went on to confirm that the 20.7 MWp cap was instead calculated by GlidePath through its interpretation of certain other requirements in the IFB.

- Robert Charles, GlidePath's expert witness, testified that there is "no specific number of 20.7" as a limitation on MWp.

- Burlingame testified that there was no limitation on the PV modules.

- Jennifer Sablan, GPA Engineer, testified that there was no limit on the size of the capacity of the PV array in the IFB.

- Daniele Rosati, ENGIE's Vice President of Engineering and Profession of Engineering at Polytechnic Milan, testified that there is no limitation on the MWp of the PV system.



ORIGINAL

- Dario Gigliotti, ENGIE's System Engineer and Lead Engineer on the Guam project, testified that there was no limitation on the PV capacity, to the contrary, the IFB allowed the bidders to maximize their PV capacity on both project sites.

The Public Auditor further found that all bidders, except for GlidePath, included system designs in their respective bids for at least one of the two sites that exceeded the 20.7 MWp limitation. Based on this fact, the Public Auditor concluded that all other bidders interpreted the IFB and its amendments to include a requirement that PV module capacity was limited to 20.7 MWp at each site.

Lastly, the Public Auditor cited Sablan and Burlingame's testimony that the term "PV charging system," as used in the IFB , refers to the capacity of the PV charging system, i.e., half of the PV + ESS plant that is devoted to charging the battery, and not the capacity of the PV photovoltaic cells. Based on that testimony, the Public Auditor concluded that GlidePath misinterpreted the term "PV charging system" as being interchangeable with the terms "PV array," "PV system," and "solar generation capacity."

Reviewing the Public Auditor's findings under the appropriate standard, the Court is not persuaded that the Public Auditor erred in its interpretation of the IFB requirements or that ENGIE's bid did not conform in all material respects to the IFB. The Court finds the facts cited by the Public Auditor provide substantial evidence for affirming GPA's denial of GlidePath's protest.

**B. GPA's handling of the IFB did not render it a sole-source procurement.**

Second, GlidePath argues that GPA's handling of the procurement process resulted in a sole source procurement where ENGIE was permitted to submit its bid under more favorable technical requirements. GlidePath points to instances during the procurement process where it



communicated with GPA regarding the requirements of the PV charging system and GPS did not respond. Notable, GlidePath also points to an instance where ENGIE submitted the same inquiry to GPA and GPA did not respond.

In the Decision, the Public Auditor concluded that GPA's handling of the IFB did not render it a sole-source procurement as defined in 5 GCA § 5214. In support of its conclusion, the Public Auditor relied on its interpretation that the IFB did not require a limit on the capacity of the installed PV charging system of 20.7 MW and its finding that every bidder, except for GlidePath, submitted a bid that exceeded the alleged limitation.

In addition to the Public Auditor's findings, the Court also notes that under 5 GCA § 5216--the section of Guam's procurement law that provides the competitive selection procedure--the purchasing agency has the discretion to enter into discussions with offerors. 5 GCA § 5216(d). In other words, GPA was under no obligation to respond to GlidePath's inquiries. Accordingly, based on the Public Auditor's reasoning and section 5216, the Court is again not persuaded that the Public Auditor erred in allowing the award to ENGIE stand.

**C. GlidePath's July 9, 2020 protest regarding the completeness of the procurement record was timely; however, the missing procurement records were not material to the procurement.**

Lastly, GlidePath challenges the Public Auditor's rulings on the procurement record and the timeliness of GlidePath's protest on this issue. Since whether GlidePath timely protested implicates the Court's subject matter jurisdiction, the Court first addresses that issue.

Under 5 GCA § 5425, an "offeror ... who may be aggrieved in connection with the method of source selection, solicitation or award of a contract, may protest ... in writing within fourteen (14) days after such aggrieved person knows or should know of the facts giving rise thereto." 5 GCA § 5425. Here, GlidePath submitted its third protest on July 9, 2020. In the

ORIGINAL

September 28, 2020 Decision, the Public Auditor concluded that GlidePath knew or should have known of the involvement of Burlingame and Electrical Power Systems ("EPS") (Burlingame's company) as of December 19, 2019–the date that GPA filed the procurement record. As grounds, the Public Auditor pointed to three copies of an email from Sablan to the employees of Naval Facilities Engineering Systems Command, in which Sablan stated that "[w]e are working on the following 1st amendment … Any further ESS or interconnection requirements as recently discussed with Dave Burlingame and the EPS team." *See* ER at 000352.

GlidePath argues that, due to the length of the procurement record and its sparse reference to Burlingame, it could not have known of his involvement. GlidePath asserts that it first learned of Burlingame when during the OPA hearing on July 6, 2021, Sablan testified that she worked with him on the development and specifications for the IFB and its more than twenty amendments. Furthermore, GlidePath points to Sablan's testimony from her April 16, 2021 deposition, where she testified that Burlingame may have also been consulted regarding the IFB amendments and answers provided to bidders.

Considering the Public Auditor's conclusion with great weight and the benefit of reasonable doubt, the Court does not find that the emails referenced in the procurement record filed on December 19, 2019, sufficiently support the conclusion that GlidePath should have known about the missing records on that date. First, the emails represent three pages of a 1,200 page procurement record. Second, Burlingame's name only appears once in those emails, and the content does not provide sufficient information warranting further inquiry regarding his role in drafting the IFB. Based on those facts, the Court does not find that GlidePath would be aware of missing records involving Burlingame on December 19, 2019.

## ORIGINAL

The Court agrees with GlidePath that Sablan's testimony at the OPA hearing on July 6, 2020, put it on notice of Burlingame's involvement. That testimony provided more information and context regarding Burlingame's role and in a more direct manner. Furthermore, the Court finds GlidePath first learned that Burlingame potentially had a role in the IFB when it compared the information provided in Sablan's testimony with the sparse reference to Burlingame in the December 19, 2019 procurement record. Based on that reasoning, the Court cannot conclude that the procurement record provided sufficient notice to GlidePath. Accordingly, since GlidePath filed its third protest within fourteen days of July 6, 2020, the Court finds that the protest was timely. 5 GCA § 5425.

The Court next turns to whether the missing record rendered the procurement record materially incomplete. Guam law requires that "[e]ach procurement officer shall maintain a complete record of each procurement." 5 GCA § 5249. The statute further identifies the specific records that must be kept. 5 GCA § 5249(a)-(e). These records include "a log of all communications between government employees and any member of the public, potential bidder, vendor or manufacturer which is in any way related to the procurement...." 5 GCA § 5249(b). Finally, under 5 GCA § 5250, "[n]o procurement award shall be made unless the responsible procurement officer certifies in writing under penalty of perjury that he has maintained the record required by § 5249 of this Chapter and that it is complete and available for public inspection."

In *Teleguam Holdings LLC*, the Guam Supreme Court held that once the protesting party establishes that the procurement record is incomplete and the issue is before the Public Auditor, the Public Auditor is required to engage it substantively. 2018 Guam 5 ¶ 35. The Guam Supreme Court further held that "an appealing party must establish that the items missing from

ORIGINAL

the procurement record were material to the procurement." *Id.* ¶ 39. "Missing procurement records are material when, as a result of their absence, judicial review is thwarted in determining whether the appealing party is entitled to the relief requested." *Id.* (citing *Material*, Black's Law Dictionary (10th ed. 2014)).

Here, like *Teleguam*, GlidePath established that the procurement record was incomplete. *See Teleguam*, 2018 Guam 5 ¶ 39. However, unlike *Teleguam*, GPA submitted the missing records into evidence during the OPA hearing. *See* OPA Procurement Record, OPA-PR-15267 (Supp. Procurement Record (July 9, 2020)); *compare Teleguam*, 2018 Guam 5 ¶ 7 (explaining that GSA failed to keep records of communication, drafts of IFB, and other proper materials used in the development of specifications) *and id.* ¶ 40 ("Complete and thorough judicial review of the cost analysis is impossible in this case because documents from and communications with … the government-hired expert, are missing."). The missing records included emails between GPA, Mr. Burlingame, and EPS regarding drafting the technical specifications for the IFB.

In the Decision, the Public Auditor considered whether the missing records were material to the procurement. *Compare Teleguam*, 2018 Guam 5 ¶ 35 (finding that the "Public Auditor failed to substantively analyze the incomplete record and its potential consequences"). The Public Auditor concluded that the missing documents were not material to the procurement or a determination of whether ENGIE's bid met the IFB requirements. As grounds, the Public Auditor stated that the missing documents were not part of the IFB and were not part of any amendments to the IFB; and the requirements of the IFB, as stated in the IFB and its amendments, speak for themselves.

Upon review of the missing documents and the Decision, the Court is satisfied that the Public Auditor substantively engaged with the documents and affirms his conclusion that the

# ORIGINAL

missing procurement records are not material to the procurement. First, as to whether the records were material to the determination of whether ENGIE's bid was responsive, the Court finds that the requirements of the IFB as stated, as well as the comparative bids submitted by all other offerors, provided substantial evidence supporting the Public Auditor's conclusion.

Second, as to whether GPA's handling of the procurement process resulted in a sole source procurement, the Court notes that a portion of the missing documents addresses the issue of the PV charging system's capacity. *See* OPA Procurement Record, OPA-PR-15312-15313 (commenting that the IFB "does not address much if anything about the PV side of things itself from an electrical perspective"). Considering that this document and the testimony of Burlingame were before the Public Auditor, the Court is satisfied that it received proper consideration. Furthermore, the document itself does not provide an answer to the concerns raised by GlidePath and ENGIE regarding the limitations of the PV charging system; rather, it presents questions addressed to potential ambiguities of which GlidePath was aware and which GPA chose not to incorporate. Accordingly, since all offerors were subject to the IFB and only GlidePath provided a bid under the assumption that the PV charging system was limited to 20.7 MW, the Court is satisfied that substantial evidence supports the Public Auditor's conclusion.

Accordingly, the Court finds that the Public Auditor erred in finding that GlidePath's third protest was untimely. Nonetheless, the Court affirms the Public Auditor's conclusion that the missing procurement record was not material to the procurement relative to this judicial determination.

## III.    CONCLUSION AND ORDER

The Court determines that substantial evidence supports the Public Auditor's Decision affirming GPA's award of IFB No. GPA-IFB-007-18, Renewable Energy Resources Phase III to



ENGIE. In addition, the Court determines that while the Public Auditor erred in finding GlidePath's third protest to be untimely, the Court determines the missing portions of the procurement record were not material to the procurement or this dispute.

SO ORDERED this 27th day of January 2022.

_____
HON. ELYZE M. IRIARTE
**Judge, Superior Court of Guam**

**SERVICE VIA E-MAIL**
I acknowledge that an electronic
copy of the original was e-mailed to:
RAZZANO, BOTHA, ARRIOLA
THOMPSON, BLAIR
Date:_____Time:__1/27/22__
_Joseph Bamba Jr._
Deputy Clerk, Superior Court of Guam

Appearing Attorneys:
Joseph C. Razzano, Esq., and Joshua D. Walsh, Esq., Razzano Walsh & Torres, P.C., for Plaintiff
       Glidepath Operations, Inc.
D. Graham Botha, Esq., General Counsel, for Defendant Guam Power Authority
Mitchell F. Thompson, Esq., Thompson Thompson & Alcantara, P.C., for Office of Public
       Accountability
Richard E. Johnson, Esq., Blair Sterling Johnson & Martinez, P.C., and Anita P. Arriola, Esq.,
       Arriola Law Firm, for Defendant Engie Solar

# ORIGINAL